Our first case on the call today is agenda number six case number one one five four two four and Ray S.L. a minor versus Julia counsel for the appellant. Please proceed. Good morning and may it please the court. Assistant Attorney General Ann Mascaleras on behalf of the people of the state of Illinois. Could you speak up please? Sure. Thank you. At no time during the trial court proceedings on her fitness did Julia ever object to or raise the lack of statutory notice issue. And to be clear the right to notice of a particular nine month period is statutory only. There is no constitutional right to notice of a particular nine month period. Julia proceeded to the fitness hearing and fully defended the allegations of unfitness. If notice of the time periods was material to the preparation of her defense, then she would have asked about it at some point during the trial court proceedings. But she didn't. If she was confused or could not prepare her case, then that would have been apparent to her during the trial court proceedings and she could have asked about the lack of notice then. But she didn't. It was not until Julia appealed from the orders finding her unfit and terminating her parental rights that she first raised the lack of notice issue. But on appeal to the appellate court and even in her briefing before this court, she has never identified any specific prejudice to her resulting from the lack of notice. Perhaps that is because there is no way there could be any confusion that this allegation went to all the potential nine month periods because Julia did not make reasonable progress and really made no improvement during the entire three year period relative to the Section 1DM3 charge. The consequences of invalidating the fitness and termination orders when the statute provides no consequences for failure to issue the notice are severe. Julia's failure to timely object to the lack of notice until appeal has now delayed resolution of the child's permanent placement and it encourages gamesmanship, providing respondent parents an incentive not to object to the lack of notice during the trial court proceedings in order to reserve a winning argument for appeal. The legislature could not have intended that. This court should reverse the judgment of the appellate court and affirm the circuit court's fitness and termination orders for two reasons. One, Julia waived the statutory notice argument by never raising it during the trial court proceedings and denying the state the opportunity to easily remedy at that time what was at most a pleading defect. And two, waiver aside, the notice provision is directory, not mandatory, and so the lack of notice neither requires nor warrants reversal of the trial court's orders. On the first issue, Julia waived the statutory notice argument and there is no reason to relax the rule of waiver here. Section 2-612C of the Code of Civil Procedure requires a respondent parent in a termination proceeding to timely raise during the trial court proceedings all defects and pleadings, either in form or substance, including a purported lack of notice as to the time periods at issue and an unfitness charge under Section 1DM3 or else waive it as an argument on appeal. This makes sense. The parent is potentially affected by such a pleading or procedural defect and must raise it during the trial court proceedings when it would be apparent to her and could easily If the petition fails to state a cause of action, wouldn't it follow that the error can be raised for the first time on appeal? There is no reason to relax the rule of waiver here because the petition did state a cause of action because the notice of the time periods is not part of the cause of action or part of the allegation of unfitness. The appellate court felt it was a necessary part of the termination petition's allegation of unfitness. The appellate court stated that and respectfully we believe the appellate court is wrong. The notice provision is a consequence of making the 1DM3 allegation of unfitness. It's not required in the petition itself. It's required at some later time, three weeks before the close of discovery and prior to the hearing. At the time it added the notice provision, the legislature is presumed to have known this court's established precedent that a petition for termination need only allege that a parent is unfit and specify the statutory grounds in section 1D on which the charge of unfitness is based. When adding the notice provision, the legislature could have specified that no allegation of unfitness or cause of action under 1DM3 would be stated until the notice was issued, but it didn't do that. Or it could have detailed a consequence for the failure to issue the notice, but it didn't do that either. It would be a departure from this court's established precedent to conclude that the notice must be part of the allegation of unfitness when the legislature did not so specify. However, counsel, do you think the legislature really intended to invalidate the termination orders because parents were not notified of the nine-month period? It seems pretty severe that the best interest of a child after the entire unfitness and best interest hearings were, you know, already had. In addition, I think, didn't the state present evidence in all four periods? That's exactly right, Your Honor. If there was a problem in preparing her defense, Julia would have known that in preparing her defense due to the lack of notice, but obviously there wasn't, and you're correct. There was evidence during the entire three-year period that she really failed to make any improvement at all, so there could not have been any confusion in this case. So there was no prejudice? No, there was no prejudice in this case, and she has never specifically identified, even in the briefing before this Court, to this date, any prejudice that inerred to her as a result of the lack of notice. And this is of consequence, of course, when we talk about whether the statute is directory or mandatory. This Court, as recently as the MI case, looked at the facts of the case before it to determine whether the right protected would be generally injured under a directory reading. And there is no prejudice here for the reasons that Your Honor alluded to. The right, which is statutory only, clearly would not be prejudiced, generally injured, under a directory reading. And yes, the consequences of a mandatory reading would be severe. It has delayed placement of the minor child, the permanent placement for the minor child. And again, as I alluded to in my opening, it could really encourage gamesmanship. A respondent parent could know that the notice was issued and not need it, but never raise it during the trial court proceedings and keep it in its back pocket until the appellate court proceedings as a ground for reversible error to automatically void out a fitness finding or, as the case was here, a termination order. What about the fact that the case you're relying on, which is Kenneth J., I believe, predated the time of the amendment of the statute? How does that impact your analysis? I don't think it impacts our analysis at all. The same reasons apply for applying waiver as it did in a preamendment case as it does in a postamendment case. It's on a respondent parent in a termination proceeding to object to something like this or else waive it. There's no reason to change the rationale of that case in a postamendment case. Do you think we're compelled to look at the legislative history as to why they passed that amendment, whether it was an attempt to set aside what this court had determined? I don't think the court is compelled to look at the legislative history, but I think the statute in this case is clear, and I think had the legislature intended that there be a consequence for the failure to specify a notice that it would have provided one in the statute when it amended it. Excuse me. What about the statutory provision that talks about the failure to file a written denial? Does that constitute an admission? That's some kind of general statutory indication of the legislature's intent on preserving the rights of the parent? No. The failure to deny the allegations in the notice pleading, the state has never argued and doesn't argue now that the failure to object to the lack of notice created an admission that the facts in it or in the petition are true. The safeguards are still in place. The unfitness allegations must still be proved by clear and convincing evidence, and this sentence doesn't refer to a respondent parent's duty under 2-612C to object or else waive it. If the court has no further questions, I would ask that the judgment of the appellate court be reversed and that the circuit court orders be affirmed. Thank you. Counsel for the appellate. Thank you. May it please the court, I'm Bill Mullen. I represent Julia Finley. Before I start, I want to say it is an honor for me to appear before the Illinois Supreme Court. I've practiced 28 years, and it's a real honor to finally make it. I think the state makes arguments that really don't apply in this case. Number one, I don't think we have to fear that parents are going to keep in their back pocket this argument that everything's over because they didn't provide notice. It's a case of first impression. Once this court makes a ruling that you have to do this, state's attorneys are going to do it. If we look at the legislative history in this case, it was after the case that the state cites in their brief, and the legislature then took action. And if you look at that legislative history, which we've provided to the court, it's clear that they were concerned that when the state relies on that conclusory statement that we can terminate you for any nine-month period, they wanted to make sure that rights were not infringed by saying, Mr. State's attorney, if you're going to do this on any nine-month period, then you need to inform mother or father because this is an ultimate right. What do we do, Mr. Milner, with the lack of prejudice in this case? You know, the Juliet defended all four periods, right, and doesn't seem to offer any argument that the evidence was closely balanced. Evidence was presented with respect to all four periods, and she defended all of them at trial as if all four were at issue. So it's difficult to see any prejudice in this particular context, isn't it? Well, I understand that, Your Honor. I didn't try this case at the trial court level. I was appointed for the appeal. What I would say about that, there is much confusion in this case if you actually look at what happened. Even the trial judge in this case did not specify which periods he was finding her unfit under. At the appellate court level, the state argued that there were four periods, but they utilized different dates, if you look at the briefs, than was used in the briefs to this court. The nine-month periods, they were different from one argument to the other. In addition, at the appellate court level, it was admitted by those who argued on behalf of the state that in the third period, they could not sustain a finding that she was unfit. Then in the brief before this court, it says they could have terminated her under any of the four-month periods, and they were analyzing different periods. If you review the trial court's order, he basically says she's unfit under this allegation. He never specifies, and I believe that that's what the legislative intent considered. They wanted judges to break this up into the various nine-month periods so that the defendant mother in this case was able to predict exactly what was coming forth. There were several allegations against her. Two of those on directed verdict were dismissed by the court. And I think it's difficult, Your Honor, to argue that there's no prejudice, and I'm not sure that's the issue with all due respect. I think the issue is, as the appellate court fifth district found, is whether or not a cause of action was actually stated. And in this case, it wasn't. And I think the key to that ---- Mr. Milner, though, you know, the result, though, is difficult for the child. And if this were a criminal indictment, reversal would not be required. In criminal cases, the prosecution can amend formal defects in indictments at any time. So why would that be different here? Your Honor, I understand. What's different here is the fact that what you have is an indication. And when you talk about the child, I want to address that first. The child has continued, as is in the record, to have a relationship with mother. Part of the reason this case has taken so long is not because of this argument, but it's simply the way these work. The state even says in its brief that this is not something that would harm normally or generally the rights of a parent, because many of them can be finished within the first nine-month period. Well, as a trial practitioner, and as many of your honors probably were involved in these cases, that's the exception, not the rule. And what's significant here is that the cause of action was not even stated. By the legislature indicating that the defendant did not have to answer this, but it was a part of the pleading, it appears that the legislature wanted to do exactly what we're here arguing. In other words, protect the parent's rights by requiring this allegation. If it's not a pleading, a proper pleading, you don't waive that. She can argue there was no cause of action stated, because if they were going to use that specific section, the requirement of a proper pleading is that you identify each one of those so that you can be prepared. Does it prejudice the mother? I would argue it does, because these nine-month periods, it requires them to pick and choose which ones they believe you can succeed on. And when the evidence is presented, though, in the manner in which it was in this case, it was like a shotgun. Nobody said to anybody that we're taking these periods and then we're moving to these periods. And so nobody ever really identified it other than saying, here's the service plan, but as this court and other courts have ruled, the service plan really is not evidence at all. It's an opinion of a DCFS worker. If we take your argument as to when there's a defective pleading and no objection to that pleading, doesn't that somewhat substantiate what opposing counsel said about gamesmanship? You know something's missing in the pleading, you go through the entire trial, tell your client, well, you know, we might prevail a trial, we might not. If not, we've got this in our back pocket. Well, Your Honor, I don't believe there's any evidence. I'm not saying there's evidence of it. Doesn't it lend itself to that? Your Honor, as I said when I began, I believe once this court makes a ruling that says this is the way it is, it's not going to be something you can put in your back pocket. At that point in time, states' attorneys are not going to simply sit back and ignore this statute. It's been ignored, and there's a clear legislative intent that they're trying to protect mothers and fathers so they are prepared. This is an argument that apparently it occurred after this other case, and they were concerned. Mother basically didn't even object at that case, if you look at the facts, that she was not receiving proper notice or that the pleading was improper. But in effect, the legislature then came about and said, we want this as a part of the pleading in your cause of action. And as a part of the pleading, it's not a procedural matter where they're saying, we just want you to give notice if somebody asks for it, as we do in criminal cases and other cases. You have to send out your request for information. This is a dictate that says you will specify these periods as a part of the pleading or motion. But counsel, the statute doesn't say that. And in fact, it contemplates the specification of the time periods at a later period, at a later time. How does that fit in with your argument? Your Honor, it does say at a later time. However, if you read the entire statute, it does in fact say, it shall be considered a part of the petition or motion. In other words, it becomes a part of the pleading. However, you don't have to answer it if you're the parent. But if it's not essential at the time the case is filed, and a motion were directed that it didn't state a cause of action, that motion would be denied because they can specify that at a later time. So how is it then essential to the pleading itself? I mean, we traditionally think of pleadings as standing on what's filed, not on waiting on something to come in later. Well, I agree, Your Honor. However, for example, a state can amend at any time. This is a requirement that the state amend beforehand or add to. In other words, I understand that motions could have been filed saying it's inadequate. However, this Court had previously ruled that simply stating the statute, the statutory allegation itself, was enough. But, counsel, how could you say that she didn't have notice? I mean, she was doing the service plan every nine months, so she would know which nine, you know, all the nine months that she participated in service plans. And when the state filed the petition, it would, she could be, I mean, generally speaking, she knows that the entire time that she did those nine months, cumulatively, she was on notice. So isn't this form over substance? Well, no. She thinks, during this period, yes, is she going through the nine months? Does she know what DCF is doing with her? Yes. Does she know that as far as the Court is concerned that she hasn't complied in those? No. It's the opinion of DCFS as to whether or not she's met her service plan. So, in fact, a parent who's not familiar with the law, most of these cases, people that can't afford attorneys, they're appointed the public defender. Not that he did a bad job in this case. I'm not suggesting that at all. But they're going along, and they're doing everything they believe they should do. This is not a woman who had no visits, who wasn't allowed to see her child. If you look at the record, she showed up for visits. She was taking medication as she was supposed to. In fact, there's a lot of evidence that she had raised another child who is the same age now, basically older now, but she had that child at the age that the other child that DCFS left with her was at that time. So she was apparently a good parent with regard to the other child. She could have, and I think most parents would think, I'm doing everything they want me to do, but they're telling me I'm not. The problem with this is, and I think I go back to the order of the trial court, if you read that order, nothing's ever identified as to which period of time either. It's difficult then to come to the court and say this period, this period, this period, this period. Yeah, we can argue that, but we don't know what the judge ruled. Did he rule on that first period? Which period did he rule on? There's much confusion in this case. As I pointed out, we have two briefs from the state, which you've reviewed, that identifies four different periods and different dates then in the other brief. One agreeing that in the third period that they couldn't have proven their allegations. Here they say they could have proved all four. So what did the judge do? Did he rule on that third? And if he did, was there an admission that this is a bad verdict? We don't know. As the court sits here today, all we know is that the judge must have thought, I guess, in some nine-month period that she didn't make it. But that's not really proper at all. How can she come to you and say I was prejudiced here, here, here, and here by evidence going in when she doesn't even know? We don't know today which period the judge ruled on. And that's the problem. It's not fair. It's a denial of due process. And I think the judge was confused as well with all due respect. How could he have broken it up? If you look at the way this evidence was presented, it truly was throw everything and let's see what sticks. And if you consider it all cumulatively as you're not supposed to, I mean, you're supposed to look at each period. That's exactly why the legislature said you've got to specify it, which means the trial judge should specify which period he ruled on as well. And I believe that's why it's important to realize that the key factor here is the legislature said this is going to be a part of the petition or motion, whichever is in front of this court, much different than saying simply this is something you've got to do. It's an actual statement that it is a part of their pleading, especially when you consider they said, but, you know, mother doesn't have to answer it or father doesn't have to answer it. So it's a necessary part of the allegation under DM3. In other words, you state the initial part, but later, after the case develops, because many times these drag on for a long time after that petition is even filed. These don't get heard immediately. In other words, they file the petition. It could go on another nine-month period or another two nine-month periods before the court ever gets it heard. And so what they did, they said before that happens, you've got to put them on notice because when they originally filed the petition, there may have only been one nine-month period. Now we have four. In fact, I understand how the court is concerned about how long this has taken. This case, the child was adjudicated exactly six years ago today. However, she still has a relationship with her mother, visits regularly. So I don't think looking at harm to the child is really where we ought to be in this case. The question is, was it a part of their pleading? First, was the statute mandatory? Yes, it was. Does it generally affect parents who are in a termination proceeding? Yes, it does. To just put our head in the sand and believe that the majority of these cases end in nine months is not the correct thing to do. The requirement of the legislature by saying this is a part of the petition or motion means it's a necessary allegation for that particular ground to be sustained. They had other grounds as well. No requirement for that. Is there anything in the statute when you're talking about mandatory directory that provides or says there's something negative should happen in the event the state does not do this? No, Your Honor. Isn't that part of our jurisprudence? Well, Your Honor, I believe there's an exception to that when the right is generally affected that's sought to be protected. In other words, by not stating a cause of action, does this generally affect constitutional rights? And I would suggest in this case the majority of these cases take much longer than nine months, as this Court is well aware from reviewing juvenile cases in this Court. So it does generally affect the constitutional rights of the person sought to be protected. Is there any obligation on the respondent to move to strike the pleading if it does not state a cause of action at the outset? Not if it affects a substantial right or is a necessary allegation. And my argument here, Your Honor, we don't waive that under the rules of this Court even or of the rules of civil procedure. If it is one that is necessary to state a proper cause of action, we can raise it at any time. And by making the argument I have earlier, by the legislature saying this is a part of the actual pleading, if you're using that particular part, then it does affect, it's a requirement, it's mandatory that you file that and plead it. So following up on Justice Garment's question, this was a proper cause, a properly stated cause of action at the outset, but later became, what, effective or less than that? Your Honor, I don't think that, yeah, the State's required to plead the statutory allegation. That keeps it in court. It doesn't necessarily mean it's proper, and I think under this statute, if you're going to go, and only if you're going to go on several nine-month periods, then it is a necessary requirement, but they don't have to file that before 21 days prior to the actual hearing. The reason for that is, as I said earlier, basically these cases go on and on. The State can't specify which nine-month period it's going on until approximately 21 days before trial. In other words, they file it, 18 months goes by, they have to tell you then, here's what we're going to do now. There's much more, there's more time than when we initially filed this. Mr. Milner, please explain to me, I don't think you're arguing that there was insufficient evidence, are you? Because you haven't really mentioned the evidence presented against her in terms of, so you're not challenging that there was sufficient evidence. We are challenging, we did challenge that, in fact, Your Honor, at the lower court, but that was not. But not here, or in the appellate court. So that's not being, it's not an issue here that there were. No, I don't think the State didn't pursue that. In effect, what we've argued in this case is we were unable to determine even if the manifest weight of the evidence was met or not. Because we have no idea which nine-month period. But you're not challenging there was sufficient evidence for the termination? I think there's been an admission by the State that at least one period there was not sufficient evidence. And I don't agree, Your Honor, that there was sufficient evidence to terminate her. If you review the entire record in this case, it's obvious that she had made progress. And we argued that extensively in the lower court, at the appellate court. And we, in fact, prevailed on that issue. And it wasn't raised here. My time is up. Thank you, Mr. Milner. Thank you, Your Honors. Counsel, may I ask a fact question before you begin your rebuttal? In the appellate court, the appellate court reversed the trial court's finding. And certainly this issue about the requirement of notice was the key part. But the court remanded the matter back to the trial court for further proceedings. So what was anticipated would occur after the case was remanded? I don't know. At this point, since the appellate court reversed the termination and the fitness orders, if that were to stand, I guess that the circuit court would have to vacate its orders, but then it could, I think proceedings could go forth still, initiated by the State. I'm not saying that that should happen, what might happen. I think it's in the realm of possibility that that could happen, that further proceedings could occur. That is specifically what the appellate court ordered, however, remand for further proceedings. So certainly in further proceedings, the State could refile with these dates in place and proceed to another hearing. I think that is possible, yes. Three points in reply. I'll first address the issue about the notice not being a part of the cause of action. And I'll quote the statute as it reads, to which counsel alluded, the allegations in the pleading shall be treated as incorporated into the petition or motion. The State need not specify the periods in the termination petition itself, but only at this much later time. It is not logical to think that there would be no cause of action or no allegation of unfitness under 1DM3 until this much later time. The notice provision is a consequence of making the 1DM3 allegation of unfitness. It may narrow the focus of the allegation, but it is not part of the allegation of that allegation of unfitness or that cause of action. Again, the legislature is presumed to have known this court's precedent, that a petition for termination needs state that a parent is unfit and identify the statutory ground under Section 1D, which this petition did. When adding the notice provision, it could have specified that no allegation of unfitness or cause of action under this particular section would be stated until the notice was issued, but it didn't. Or it could have detailed a consequence for the failure to issue the notice, but it didn't. In addressing briefly regarding prejudice, I don't believe that Julia still has shown or articulated any prejudice to her resulting from the lack of notice. If there was a problem with a lack of notice in this case or any confusion on her part, it would have been apparent to her either in preparation for the fitness hearing or at some point during the trial court proceedings. She had counsel who moved for directed verdict on the other three allegations of the petition, but not on this one. She presented evidence when her counsel questioned her regarding, quote, the entire time period throughout the time I've dealt with DCFS. She clearly defended against, as if all four nine-month periods were at issue, the entire three-year period at issue with regard to the 1DM3 proceedings. Clearly, there was no reasonable progress or no improvement from her during that entire three-year period, and just briefly, there was no confusion as to the time periods. Counsel alluded to the state's brief in the appellate court. The state inadvertently appears to have inadvertently miscounted the time periods in its appellate brief in the Fifth District, which we pointed out in our briefing to this court. But in this court, Julia admitted that the state's statement of facts was sufficient to frame the issues on appeal, and never contested the facts as supported by the record evidence. And again, it's clear that Julia made no improvement and no reasonable progress at any time during the three-year period. Did the state, in fact, concede that there was insufficient evidence as to one of the periods? No. By its appellate court briefing, no. It was a... At any time. Counsel has argued that. No. No. Did the trial judge pick and choose from different periods, as counsel would have stated? The trial judge found that that allegation of unfitness was met by clear and convincing evidence. The trial court did not specify the period he relied on, but Julia never asked for clarification from the trial judge either after the order was entered. So because there was evidence presented for the entire period subject to this allegation of unfitness, the trial judge could not have been confused that she failed to make reasonable progress during the entire period. I would respectfully request, if this court has no further questions, that this court reverse the judgment of the appellate court and affirm the circuit court's orders. Thank you. Thank you. Case number 115-424, N. Ray Alsall, a minor, State of Illinois Appellant v. Julia F. Appley, is taken under advisement as agenda number 6. Ms. Mascaleras, Mr. Milner, we thank you for your arguments today. Thank you, Your Honor.